CHRISTOPHER COOKE, CA Bar #142342
STEPHEN S. WU, CA Bar # 205091
COOKE KOBRICK & WU LLP
177 Bovet Road, Suite 600
San Mateo, CA 94402
Email:  ccooke@ckwlaw.com
          swu@ckwlaw.com
Tel: (650) 638-2370
Fax: (650) 341-1395
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MEI-FANG LISA ZHANG, et al.,<br><br>    Plaintiffs,<br><br>    vs.<br><br>WEI-MAN RAYMOND TSE, et al.,<br><br>    Defendants. | Case No.:  C-07-04946 JSW<br>(Related to J-05-02641 JSW)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS WEI-MAN RAYMOND TSE, THERESA WONG, JAMES YU, BILL SHU WAI MA, VICTOR SO, JIAN XIAO, CHRIST INVESTMENT SERVICE INC., CIS SERVICE, INC., PACIFIC BEST GROUP LTD. a.k.a. PACIFIC BEST COMPANY LTD., AND SOUTH CHINA INVESTMENT INC. UNDER FED. R. CIV. P. 55(b)(2)**<br><br>Date:  January 9, 2009<br><br>Time:  9:00 a.m.<br><br>Courtroom:  2, 17th Floor |

    TO DEFENDANTS WEI-MAN RAYMOND TSE, THERESA WONG, JAMES YU, BILL SHU WAI MA, VICTOR SO, JIAN XIAO, CHRIST INVESTMENT SERVICE INC., CIS SERVICE, INC., PACIFIC BEST GROUP LTD. a.k.a. PACIFIC BEST COMPANY LTD., AND SOUTH CHINA INVESTMENT INC.:

PLEASE TAKE NOTICE that on January 9, 2009 at 9:00 a.m., or as soon thereafter as the matter may be heard in the above-entitled Court, located at 450 Golden Gate Ave., San Francisco, CA 94102, Plaintiffs MEI-FANG LISA ZHANG, BAY AREA AFFORDABLE HOUSING, LLC, XUE-HUAN GAO, YANG-CHUN ZHANG, CAROL JIAN DENG, and HAO LIANG will move the Court, and Plaintiffs do hereby move, for default judgment (including prejudgment interest, costs, and attorneys' fees) plus post-judgment interest thereon against Defendants WEI-MAN RAYMOND TSE, THERESA WONG, JAMES YU, BILL SHU WAI MA, VICTOR SO, JIAN XIAO, CHRIST INVESTMENT SERVICE INC., CIS SERVICE, INC., PACIFIC BEST GROUP LTD. a.k.a. PACIFIC BEST COMPANY LTD., and SOUTH CHINA INVESTMENT INC. pursuant to Fed. R. Civ. P. 55(b)(2). The foregoing Defendants have not appeared, answered, or otherwise responded to the Summons and Complaint in this case. The Clerk has already entered defaults against these Defendants.

The supporting declaration of Mei-Fang Lisa Zhang filed herewith demonstrates that none of the Defendants in this case is a minor, an incompetent person, in military service, or otherwise exempted from default judgment under the Servicemember's Civil Relief Act, 50 App. U.S.C. § 522.

Plaintiffs are entitled to judgment against the Defendants on account of the claims pleaded in the Complaint, namely RICO (18 U.S.C. § 1962(c)), RICO conspiracy (18 U.S.C. § 1962(d)), commodities fraud (7 U.S.C. § 6b(a)), commodities fraud – illegal off-exchange futures contract (7 U.S.C. § 6(a)), commodities fraud – fictitious sales (7 U.S.C. § 6c(a)), commodities fraud – conversion (7 U.S.C. §§ 6(a)(2), 13(a)(1)), fraud, common law conversion, breach of fiduciary duty, breach of oral contract, negligence, and unfair competition (Cal. Bus. & Prof. Code § 17200 et seq.). A default judgment against the Defendants is now warranted.

The amount of judgment sought is the sum of $1,080,933.55 as explained in the Memorandum of Points and Authorities filed herewith and supported by the declarations of each of the Plaintiffs itemizing their individual damages and the declaration of Stephen S. Wu, which summarizes and explains the total amount of the judgment sought, including compensatory

damages, prejudgment interest, costs, and attorneys fees sought in this case, along with the calculation of post-judgment interest that will accrue following entry of judgment.

The motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the declarations of counsel and the Plaintiffs, the entire file of this matter, arguments of counsel, and by such other evidence as may be presented before or during the hearing of this Motion.

Respectfully Submitted,

COOKE, KOBRICK, & WU LLP

Dated: November 26, 2008

By: _____

/s/

STEPHEN S. WU
Attorneys for Plaintiffs

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT
Case No.: C-07-04946 JSW

CHRISTOPHER COOKE, CA Bar #142342
STEPHEN S. WU, CA Bar # 205091
COOKE KOBRICK & WU LLP
177 Bovet Road, Suite 600
San Mateo, CA 94402
Email:  ccooke@ckwlaw.com
   swu@ckwlaw.com
Tel: (650) 638-2370
Fax: (650) 341-1395
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MEI-FANG LISA ZHANG, et al., | ) Case No.:  C-07-04946 JSW |
| | ) (Related to C-05-02641 JSW) |
| Plaintiffs, | ) |
| | ) **PLAINTIFFS' MEMORANDUM OF** |
| | ) **POINTS & AUTHORITIES IN** |
| vs. | ) **SUPPORT OF MOTION FOR DEFAULT** |
| | ) **JUDGMENT AGAINST DEFENDANTS** |
| | ) **WEI-MAN RAYMOND TSE, THERESA** |
| WEI-MAN RAYMOND TSE, et al., | ) **WONG, JAMES YU, BILL SHU WAI** |
| | ) **MA, VICTOR SO, JIAN XIAO, CHRIST** |
| Defendants. | ) **INVESTMENT SERVICE INC., CIS** |
| | ) **SERVICE, INC., PACIFIC BEST** |
| | ) **GROUP LTD. a.k.a. PACIFIC BEST** |
| | ) **COMPANY LTD., AND SOUTH CHINA** |
| | ) **INVESTMENT INC. UNDER FED. R.** |
| | ) **CIV. P. 55(b)(2)** |
| | ) |
| | ) Date:  January 9, 2009 |
| | ) |
| | ) Time:  9:00 a.m. |
| | ) |
| | ) Courtroom:  2, 17th Floor |

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................... 1

II.  STATEMENT OF FACTS AND PROCEDURAL BACKGROUND ...................................... 1

  A.  Factual Background .......................................................................... 1

  B.  Allegations of the Complaint and Procedural Background ............................ 2

  C.  Amount of Damages Sought ............................................................... 3

III.  ARGUMENT ...................................................................................................... 5

  A.  Legal Standard ............................................................................... 5

  B.  Plaintiffs Will be Prejudiced if They Are Not Given Relief ........................... 5

  C.  The Merits of the Case Support Default Judgment ..................................... 6

    1.  Plaintiffs Stated a Valid RICO Claim .................................................. 6

    2.  Plaintiffs Stated a Valid RICO Conspiracy Claim .................................... 8

    3.  Plaintiffs Stated a Commodities Fraud Claim ....................................... 8

    4.  Plaintiffs Stated a Valid Claim for Illegal Off-Exchange Futures Contracts ........ 9

    5.  Plaintiffs Stated a Valid Fictitious Sales Commodities Fraud Claim ............... 9

    6.  Plaintiffs Stated a Valid Claim for Commodities Fraud Conversion ............. 10

    7.  Plaintiffs Stated a Valid Fraud Claim ............................................... 10

    8.  Plaintiffs Stated a Valid Common Law Conversion Claim ........................ 11

    9.  Plaintiffs Stated a Valid Claim for Breach of Fiduciary Duty .................... 11

    10.  Plaintiffs Stated a Valid Breach of Oral Contract Claim .......................... 12

    11.  Plaintiffs Stated a Valid Negligence Claim ......................................... 13

    12.  Plaintiffs Stated a Valid Claim for Unfair Competition ........................... 13

  D.  Plaintiffs Are Seeking a Reasonable Amount of Money ............................. 14

  E.  Defendants' Default is not Due to Excusable Neglect ................................ 15

  F.  The Policy Favoring a Decision on the Merits Should Not Weigh Against a Default

  Judgment ................................................................................... 16

IV.  CONCLUSION ................................................................................................. 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) ........................................................ 5

*AmerUS Life Ins. Co. v. Bank of America, N.A.*, 143 Cal. App. 4th 631, 642 n.4, 49 Cal. Rptr. 3d
    493, 501 n.4 (2006) ....................................................................................................... 11

*Croswaithe v. Galvin Construction Management*, 2007 U.S. Dist. LEXIS 73757, at * 8 (N.D.
    Cal. Sept. 25, 2007) ........................................................................................................ 5

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) ...................................................... 5

*Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) ......................................... 5

*H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 232-33 (1989) ................................. 6

*O2 Micro International Ltd. v. Monolithic Power Systems, Inc.*, 420 F. Supp. 2d 1070, 1077 n.1
    (N.D. Cal. 2006) .............................................................................................................. 4

*Pellegrini v. Weiss*, 165 Cal. App. 4th 515, 524, 81 Cal. Rptr. 3d 387, 397 (2008) .................... 11

*PepsiCo v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999) ................................. 5

*Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990, 22 Cal. Rptr. 3d 352, 359 (2004)
    ....................................................................................................................................... 10

*Stokes v. Henson*, 217 Cal. App. 3d 187, 265 Cal. Rptr. 836 (1990) .................................... 11

**Statutes**

18 U.S.C. § 1962(c) ............................................................................................... 1, 2, 6, 8

18 U.S.C. § 1962(d) ................................................................................................... 1, 2, 8

18 U.S.C. § 1964 .......................................................................................................... 3, 4

18 U.S.C. § 1964(c) ......................................................................................................... 6

50 App. U.S.C. § 522 ........................................................................................................ 3

7 U.S.C. § 13(a)(1) .................................................................................................. 1, 2, 10

7 U.S.C. § 25(a)(1) ........................................................................................................... 8

7 U.S.C. § 6(a) ........................................................................................................ 1, 2, 9

7 U.S.C. § 6(a)(2) ........................................................................................................... 1, 2

7 U.S.C. § 6b(a) ........................................................................................................... 1, 2, 8

7 U.S.C. § 6b(a)(i) ......................................................................................................... 9

7 U.S.C. § 6b(a)(ii) ....................................................................................................... 9

7 U.S.C. § 6b(a)(iii) ...................................................................................................... 9

7 U.S.C. § 6c(a) .......................................................................................................... 1, 2, 9

7 U.S.C. § 6d(a)(2) ....................................................................................................... 10

Cal. Bus. & Prof. Code § 17200 ................................................................................. 1, 2

## I.   INTRODUCTION

Plaintiffs MEI-FANG LISA ZHANG, BAY AREA AFFORDABLE HOUSING, LLC, XUE-HUAN GAO, YANG-CHUN ZHANG, CAROL JIAN DENG, and HAO LIANG bring this motion for default judgment against the Defendants WEI-MAN RAYMOND TSE, THERESA WONG, JAMES YU, BILL SHU WAI MA, VICTOR SO, JIAN XIAO, CHRIST INVESTMENT SERVICE INC., CIS SERVICE, INC., PACIFIC BEST GROUP LTD. a.k.a. PACIFIC BEST COMPANY LTD. ("Pacific Best"), and SOUTH CHINA INVESTMENT INC. pursuant to Fed. R. Civ. P. 55(b)(2).  None of these defendants has appeared in this action and none has moved, pleaded, or otherwise responded to the Complaint in this case for over six months since the last Defendant was served.  Plaintiffs are entitled to judgment against the Defendants on account of the claims pleaded in the Complaint, namely RICO (18 U.S.C. § 1962(c)), RICO conspiracy (18 U.S.C. § 1962(d)), commodities fraud (7 U.S.C. § 6b(a)), commodities fraud – illegal off-exchange futures contract (7 U.S.C. § 6(a)), commodities fraud – fictitious sales (7 U.S.C. § 6c(a)), commodities fraud – conversion (7 U.S.C. §§ 6(a)(2), 13(a)(1)), fraud, common law conversion, breach of fiduciary duty, breach of oral contract, negligence, and unfair competition (Cal. Bus. & Prof. Code § 17200 et seq.).  Accordingly, the Court should enter a default judgment against the Defendants in this case.

## II.   STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

### A.   Factual Background

This is an action, both in law and in equity, brought by victims of commodities fraud under the Racketeer Influenced Corrupt Organization Act ("RICO"), the Commodity Exchange Act ("CEA"), and related common law claims.  Plaintiffs are individuals and a small business in the San Francisco Area and in particular are members of the San Francisco Chinese community. Defendants are individuals and the businesses they operated in San Francisco, which purported to conduct foreign currency futures trading on behalf of clients for investment purposes. Plaintiffs invested large sums of money with Defendants for foreign currency futures trading in response to personal solicitations and advertisements in Chinese language newspapers.  (*See*

Complaint ¶¶ 2, 25-36, 75-106; Declaration of Mei-Fang Lisa Zhang Supporting Plaintiffs' Motion for Default Judgment Against Defendants Wei-Man Raymond Tse, Theresa Wong, James Yu, Bill Shu Wai Ma, Victor So, Jian Xiao, Christ Investment Service Inc., CIS Service, Inc., Pacific Best Group Ltd. a.k.a. Pacific Best Company Ltd., and South China Investment Inc. ¶¶ 3-9 [hereinafter, "Lisa Zhang Decl."].)

Defendants' businesses, however, were wholly fraudulent. Defendants opened an office, used telephone trading telephone lines in Hong Kong, created computerized records, faxed and emailed written reports of accounts to customers, provided receipts for funds received, and in some cases returned modest amounts of investor moneys, all for the purpose of creating the appearance of a legitimate foreign currency futures trading business. Defendants, however, never actually conducted any foreign currency futures trading, and simply stole the funds that investors transferred to them and took them for their personal use. (*See* Complaint ¶¶ 3, 25-36; Lisa Zhang Decl. ¶¶ 8-9, 17-18.)

**B.    Allegations of the Complaint and Procedural Background**

Plaintiffs filed their Complaint on September 24, 2007. (Declaration of Stephen S. Wu Supporting Plaintiffs' Motion for Default Judgment Against Defendants Wei-Man Raymond Tse, Theresa Wong, James Yu, Bill Shu Wai Ma, Victor So, Jian Xiao, Christ Investment Service Inc., CIS Service, Inc., Pacific Best Group Ltd. a.k.a. Pacific Best Company Ltd., and South China Investment Inc. ¶ 2 [hereinafter, "Wu Decl."].) The Complaint alleges the above facts and other facts to support Plaintiffs' claims against the Defendants. (*Id.* ¶¶ 3-4.) Based on this conduct, the Complaint states twelve causes of action:  RICO (18 U.S.C. § 1962(c)), RICO conspiracy (18 U.S.C. § 1962(d)), commodities fraud (7 U.S.C. § 6b(a)), commodities fraud – illegal off-exchange futures contract (7 U.S.C. § 6(a)), commodities fraud – fictitious sales (7 U.S.C. § 6c(a)), commodities fraud – conversion (7 U.S.C. §§ 6(a)(2), 13(a)(1)), fraud, common law conversion, breach of fiduciary duty, breach of oral contract, negligence, and unfair competition (Cal. Bus. & Prof. Code § 17200 et seq.).

Plaintiffs effected service of process on the Defendants through various means.   With some of the Defendants, the Plaintiffs completed service of process via hand delivery of the Summons and Complaint.  Plaintiffs completed service of process on the remaining Defendants via publication following Court orders authorizing such service of process.  (*See* Wu Decl. ¶¶ 6-9, 12-13, 16-18.)

Following service of process, only two Defendants had responded in any way to the Complaint:  Molly Lau and Run Ping Zhou.  On September 3, 2008, however, Plaintiffs filed a Notice of Voluntary Dismissal of Defendant Molly Lau, thereby ending the case against her.  Plaintiffs' counsel also entered into a stipulation of dismissal with Defendant Run Ping Zhou, which the Plaintiffs filed on September 10, 2008.   At the time of entry of the stipulation of dismissal of Defendant Zhou, all non-defaulting Defendants had been dismissed.  The remaining Defendants failed to appear, answer, or otherwise respond to the Summons and Complaint in this action.  Thus, all of the remaining Defendants in the case were in default.  (*Id.* ¶¶ 18-19.)  The Clerk of Court entered defaults against the Defendants on November 7, 2007 and April 11, 2008.  (*Id.* ¶¶ 10-11, 15; Notices of Entry of Default, Docket Nos. 18, 60.)

None of the remaining Defendants in this case is a minor, an incompetent person, in military service, or otherwise exempted from default judgment under the Servicemember's Civil Relief Act, 50 App. U.S.C. § 522. (*See* Lisa Zhang Decl. ¶¶ 10-12.)

### C.    Amount of Damages Sought

Plaintiffs seek judgment in the amount of \$\$1,080,933.55.  This amount represents the amount of compensatory damages in the form of the return of each Plaintiff's investment, trebled pursuant to 18 U.S.C. § 1964, plus prejudgment interest, the costs of suit, and attorneys' fees.  Plaintiffs also seek an order stating that post-judgment interest accrues at a rate of \$296.15 starting on the date of the judgment until the judgment is satisfied.   This Section sets forth Plaintiffs' calculation supporting these elements of damages.

Plaintiffs seek compensatory damages in this case consisting of the amount of Plaintiffs' investments with Defendants, the return of which they seek in this action, namely

1   $330,849.  (Wu Decl. ¶¶ 20-21.)  Pursuant to 18 U.S.C. § 1964, that amount should be trebled.

2   Thus, Plaintiffs seek a total of $992,547 in compensatory damages.[1]  (*Id.* ¶ 22.)  Table 1 in the

3   Wu Declaration shows the amounts claimed by each Plaintiff, and the declarations of each

4   Plaintiff show the detail of the payments comprising these amounts. (*Id.* ¶ 21.)

5       Plaintiffs seek prejudgment interest in this case in the amount of $40,958.21.  The

6   interest is calculated in accordance with the formula of Interest = Principal * Rate * Time, as

7   set forth in *O2 Micro International Ltd. v. Monolithic Power Systems, Inc.*, 420 F. Supp. 2d

8   1070, 1077 n.1 (N.D. Cal. 2006).  Table 2 in the Wu Declaration sets forth the calculation of

9   prejudgment interest for each Plaintiff.  The interest is calculated based on a principal amount

10  consisting of the sum each Plaintiff invested in total, starting on the date of the last investment

11  payment until October 31, 2008.  The applicable interest rate is 7% as specified by California

12  Constitution, article XV, section 1.  (Wu Decl. ¶¶ 23-24.)

13      The costs of suit total $7,875.84 and consist of a filing fee, the costs of service of process

14  via process servers, the costs of publication of the summons for service on the remaining

15  defendants, surveillance of Theresa Wong to try to complete service of process, a records search

16  for Pacific Best, postage and delivery charges, and photocopying charges.  (*Id.* ¶ 24.)  Paragraph

17  24 in the Wu Declaration shows an itemization of the costs of suit.  If the Court would like to

18  inspect the detail of each category of costs above, the date the costs were incurred, and a

19  description of each item of cost above, Plaintiffs' counsel is willing to file a supplemental

20  declaration containing such detail.

21      The amount of attorneys' fees incurred in this suit through October 31, 2008 is

22  $39,552.50.  (*Id.* ¶ 27.)  If the Court would like to inspect the detail of each item of fees for

23  services performed by Plaintiffs' counsel, the date the services were performed, the lawyer

24

25

26  [1] For the sake of simplicity, Plaintiffs do not seek, with this Motion for Default Judgment, consequential damages alleged in the Complaint consisting of the investment return Plaintiffs could have obtained from foreign currency trades or prudent investments from the time of their

27  investments to date.  Nonetheless, Plaintiffs reserve the right to seek such consequential damages in the event judgment in this case were ever reopened for any reason and a trial occurred, which

28  damages should be trebled under 18 U.S.C. § 1964.

performing the services, a description of the services, the hourly rate applicable to such services, and the amount of fees charged for each item of services based on the hourly rate, Plaintiffs' counsel is willing to file a supplemental declaration containing such detail.[2]

## III. ARGUMENT

### A. Legal Standard

In the Ninth Circuit, courts must consider the following factors in deciding whether to grant a default judgment:  "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits."  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).   If the Court determines that a defendant is in default, the defendant's liability is conclusively established and the factual allegations in the Complaint, except those relating to damages, are accepted as true.  *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977).

The Court has the discretion to grant or deny relief upon a motion for default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Nonetheless, in applying the Court's discretion in light of the *Eitel* standard, "default judgments are more often granted than denied." *PepsiCo v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999).  In this case, all of the *Eitel* factors militate in favor of granting default judgment to Plaintiffs.

### B. Plaintiffs Will be Prejudiced if They Are Not Given Relief

Plaintiffs are seeking damages against the people and companies that defrauded them out of their savings in a bogus foreign currency futures investment scheme. In *Croswaithe v. Galvin Construction Management*, 2007 U.S. Dist. LEXIS 73757, at * 8 (N.D. Cal. Sept. 25, 2007), this Court found that plaintiff trust fund fiduciaries seeking unpaid employer contributions would be

---

[2] Costs and attorneys' fees incurred in connection with claims against or asserted by dismissed Defendants Molly Lau and Run Ping Zhou are not included in the above amounts of costs and fees.

prejudiced if a default judgment were not granted against the employer entities, saying "[a] denial of plaintiffs' motion will leave plaintiffs without a remedy, thus causing prejudice." As in *Croswaithe*, if the Court does not grant relief, the Plaintiffs will have no other way of recovering the funds to which they are entitled. Thus, a denial of relief will cause Plaintiffs prejudice.

## C.   The Merits of the Case Support Default Judgment

The merits of the case weigh heavily in Plaintiffs' favor, Plaintiffs' Complaint states a sufficient claim for relief, and therefore, there is little possibility of dispute concerning material facts. The second, third, and fifth *Eitel* factors require the Court to analyze the merits of the case together with the sufficiency of the Complaint to determine if they weigh in favor of granting a default judgment. *See Croswaithe v. Galvin Construction Management*, 2007 U.S. Dist. LEXIS 73757, at * 6-7 (N.D. Cal. Sept. 25, 2007) (grouping the analysis under second, third, and fifth *Eitel* factors).

As shown in the Complaint, the Defendants represented that investors could gain huge guaranteed returns on foreign currency futures trading, fooled Plaintiffs with phony account statements, created the appearance of an office conducting an international forex trading operations, took Plaintiffs' money, and simply stole that money. (Complaint ¶¶ 41-51.) Based on these facts, Plaintiffs stated the causes of action set forth below.

### 1.   Plaintiffs Stated a Valid RICO Claim

Plaintiffs' first claim is a RICO claim under 18 U.S.C. § 1962(c), and they can establish each element of a RICO claim. RICO requires a showing of (1) a defendant "person" (2) who is "employed by or associated with . . . an enterprise" (3) that is engaged in or affecting interstate commerce (4) and conducts or participates in the conduct of its affairs" (5) "through a pattern" (6) of "racketeering activity" (7) that injures plaintiff in its business or property. *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 232-33 (1989); 18 U.S.C. §§ 1962(c), 1964(c). Here:

 1.   Defendants are individuals and corporations, and thus are all "persons" as "individuals" or "entities" capable of holding legal or beneficial title. 18 U.S.C. §§ 1961(3). (Complaint ¶ 108.)

2.  The "enterprise" in this case ("Forex Fraud Enterprise") consists of the collection of the following individuals and entities: (1) Wei-Man Raymond Tse, (2) Run Ping Zhou (a.k.a. Flora Zhou), (3) Theresa Wong, (4) James Yu, (5) Bill Shu Wai Ma, (6) Molly Lau, (7) Victor So, (8) Jian Xiao, (9) Christ Investment Service Inc., (10) CIS Service, Inc., (11) Pacific Best Group Ltd. (a.k.a. Pacific Best Company Ltd.), (12) South China Investment Inc., (13) National Investment Consultants, Inc., (14) Christ Investment FCM Service, Inc. (a California corporation), (15) CIS International LLC (a Nevada limited liability company), and (16) Christ Investment Service, LLC.  Defendant Tse was the mastermind behind this enterprise.  The other individuals worked for and managed the affairs of the business entity Defendants.  (Complaint ¶¶ 109-110.)

3.  The Forex Fraud Enterprise engaged in interstate and indeed international commerce, since it sought investments in foreign currency futures trading. (Complaint ¶¶ 41-51, 112.)

4.  Defendants conducted or participated in the conduct of the Forex Fraud Enterprise.  (Complaint ¶ 110.)

5.  The "pattern" of activity consists of numerous predicate acts, as described in the Complaint, within recent years.  (Complaint ¶¶ 127-128.)

6.  The "racketeering activity" consists of the predicate acts of wire fraud, bank fraud, and interstate transportation of stolen property.  (Complaint ¶¶ 117-126.)

7.  Defendants' conduct has injured in Plaintiffs' property in that they invested money with Defendants, which Defendants stole.  (Complaint ¶¶ 75-106.)  The supporting declarations of the Plaintiffs enumerate their investment losses.

Given these facts, Plaintiffs have stated an adequate RICO claim entitling them to relief, and no factual dispute concerning the RICO claim is likely.

### 2.      Plaintiffs Stated a Valid RICO Conspiracy Claim

Plaintiffs' second claim is their RICO conspiracy claim.  The RICO conspiracy statute, 18 U.S.C. § 1962(d), provides, "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  In this case, Defendants violated section 1962(d) by conspiring to violate 18 U.S.C. § 1962(c).  The Complaint alleges that the Defendants agreed among themselves to steal money from investors such as Plaintiffs, and to conduct and/or participate in, directly or indirectly, the conduct of the affairs of the Forex Fraud Enterprise described above through a pattern of racketeering activity.  (Complaint ¶¶ 135-140.) The previous subsection describes the pattern of racketeering activity comprised of predicate acts of wire fraud, bank fraud, and interstate transportation of stolen property that the Defendants conspired to commit.  Given these allegations, Plaintiffs adequately alleged a RICO conspiracy claim upon which relief can be granted, and a factual dispute concerning the Defendants' RICO conspiracy claim is unlikely.

### 3.      Plaintiffs Stated a Commodities Fraud Claim

The third count in the Complaint is commodities fraud. Under 7 U.S.C. § 25(a)(1), any person who violates the Commodity Exchange Act ("CEA"), or who willfully aids, abets, counsels, induces, or procures the commission of a violation of the CEA shall be liable for actual damages from one or more commodities transactions, and caused by such violation to any other person who made such transactions.  Such transactions include those consisting of any contracts of sale of any commodity for future delivery or deposit or payment of money in connection with any order to make such a contract.

Defendants' purported placement of foreign currency futures trades constitutes the making of a contract of sale of a commodity for future delivery made, or to be made, for or on behalf of investors.  Such contracts for future delivery are or may be used for delivering a commodity, namely foreign currency, sold in interstate and/or foreign commerce for the fulfillment thereof.

1     The Defendants' conduct described above constitutes commodities fraud under 7 U.S.C.

2  § 6b(a).   In specific, in addition to stealing Plaintiffs' money, the Defendants made a large

3  number of fraudulent misrepresentations set forth in Paragraphs 48 and 67 of the Complaint.

4  First, such conduct shows they intended "to cheat or defraud" Plaintiffs.   7 U.S.C. § 6b(a)(i).

5  Second, Defendants sent Plaintiffs false statements of alleged foreign currency transactions,

6  alleged profits and losses, and purported account balances in violation of 7 U.S.C. § 6b(a)(ii).

7  Finally, by making the misrepresentations and omissions described in paragraphs 48 and 67 of

8  the Complaint, Defendants willfully deceived or attempted to deceive Plaintiffs in regard to

9  foreign currency futures contracts and the disposition or execution of such contracts, in violation

10  of 7 U.S.C. § 6b(a)(iii).   (Complaint ¶¶ 142-149.)   Because of these allegations, Plaintiffs

11  adequately alleged a commodities fraud claim upon which relief can be granted, and a factual

12  dispute concerning the commodities fraud claim is unlikely.

13             **4.      Plaintiffs Stated a Valid Claim for Illegal Off-Exchange Futures
14                     Contracts**

15     The fourth claim in the Complaint concerns the fact that the commodities transactions

16  undertaken by Defendants were outside of any formal (and regulated) market in violation of 7

17  U.S.C. § 6(a).   Section 6(a) contains a number of requirements for commodities transactions to

18  take place on, and be subject to, the rules of a board of trade or derivatives transaction execution

19  facility.   As alleged in the Complaint, the Defendants' commodities transaction were wholly

20  fictional and outside of any formal market in violation of Section 6(a).   (Complaint ¶¶ 151-159.)

21  Consequently, Plaintiffs' fourth claim validly alleged a violation of Section 6(a), and no factual

22  dispute concerning this claim is likely.

23             **5.      Plaintiffs Stated a Valid Fictitious Sales Commodities Fraud Claim**

24     The fifth claim in the Complaint is one for commodities fraud based on fraudulent

25  transactions.   Under 7 U.S.C. § 6c(a), it is unlawful to enter into a futures transaction that is a

26  "fictitious sale."   As alleged in the Complaint, Defendants' foreign currency futures transactions

27  were entirely fictional.   Defendants never consummated any real trades.   (Complaint ¶¶ 161-

28

164.)   Thus, they violated Section 6c(a).   Accordingly, Plaintiffs adequately alleged a valid fictitious sales commodities fraud claim, and no factual dispute concerning this claim is likely to arise.

### 6.   Plaintiffs Stated a Valid Claim for Commodities Fraud Conversion

The sixth claim in the Complaint is one for commodities fraud based on conversion. Under 7 U.S.C. § 13(a)(1), it is unlawful to embezzle, steal or convert money received from a commodities trading customer.   Moreover, under 7 U.S.C. § 6d(a)(2), it is unlawful for a commodities broker to commingle customer funds with its own funds.   As alleged in the Complaint, Defendants stole Plaintiffs' money, as their foreign currency futures transactions were entirely fictional and a ruse to obtain money from Plaintiffs and other customers. Moreover, by stealing Plaintiffs' funds, they failed to segregate customer funds from their own.   Thus, Defendants violated Sections 6d(a)(2) and 13(a)(1).   (Complaint ¶¶ 166-170.)   Accordingly, Plaintiffs adequately alleged a valid commodities fraud conversion claim, and a factual dispute concerning this claim is unlikely.

### 7.   Plaintiffs Stated a Valid Fraud Claim

Plaintiffs' seventh claim is common law fraud.   The essential elements of a fraud claim are:   "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990, 22 Cal. Rptr. 3d 352, 359 (2004).   Here, Defendants made numerous misrepresentations to Plaintiffs, as described in paragraphs 48 and 67 of the Complaint.   Defendants knew that these misrepresentations were false when they made them, and intended to defraud potential investors such as Plaintiffs and induce them to invest in foreign currency futures transactions.   Plaintiffs were unaware of the falsity of these claims and, in reliance upon Defendants' misrepresentations, invested large sums of money with Defendants.   Plaintiffs justifiably relied on Defendants' representations, because they had no reason to believe the Defendants' operations were fraudulent.   The Defendants did, however, steal Plaintiffs' investments, and thus Plaintiffs

sustained damages. (Complaint ¶¶ 172-177.) Given these factual allegations, Plaintiffs have stated a valid fraud claim, and a factual dispute concerning the fraud claim is unlikely.

### 8.    Plaintiffs Stated a Valid Common Law Conversion Claim

The eighth claim in the Complaint is common law conversion. The essential elements of conversion are: "The elements of a conversion are [1] the plaintiff's ownership or right to possession of the property at the time of the conversion; [2] the defendant's conversion by a wrongful act or disposition of property rights; and [3] damages." *AmerUS Life Ins. Co. v. Bank of America, N.A.*, 143 Cal. App. 4th 631, 642 n.4, 49 Cal. Rptr. 3d 493, 501 n.4 (2006). In this case, as described above, Plaintiffs owned the money they invested with the Defendants. The Defendants, however, stole Plaintiffs' money. As a result, Plaintiffs lost their investment funds. (Complaint ¶¶ 179-182.) Accordingly, Plaintiffs' Complaint states a claim for conversion and a factual dispute concerning the conversion claim is unlikely.

### 9.    Plaintiffs Stated a Valid Claim for Breach of Fiduciary Duty

The ninth claim in the Complaint is breach of fiduciary duty. "The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) a breach of the fiduciary duty; and (3) resulting damage." *Pellegrini v. Weiss*, 165 Cal. App. 4th 515, 524, 81 Cal. Rptr. 3d 387, 397 (2008). In *Stokes v. Henson*, 217 Cal. App. 3d 187, 265 Cal. Rptr. 836 (1990), the Court found the existence of a fiduciary duty where the defendant accumulated funds from a number of people and invested them in commodities. The investors in *Stokes* were generally unsophisticated and relied upon information provided by the defendant. The defendant also made misrepresentations and omissions, including a promise of a guaranteed return, statements that he was personally knowledgeable and sophisticated in commodities trading, and assurances of the professional nature of the investment management. *Id.* at 189-90, 265 Cal. Rptr. at 838-39. The court below called the defendant, among other things, a "trustee" of the commodities accounts and a "securities broker-dealer." *Id.* at 192, 193-94, 265 Cal. Rptr. at 839, 840**Error! Bookmark not defined.**. Given these facts, the Court held that there was "ample

evidence to support the finding" in the court below that the defendant acted as a fiduciary in his relationship with each plaintiff. *Id.* at 193-94, 265 Cal. Rptr. at 840-41.

In this case, as in *Stokes*, the Defendants received and held Plaintiffs' investment funds as a trustee in purporting to place foreign currency futures trades with these funds. Moreover, Defendants acted as a broker for these trades. They purported to collect funds from customers for the purpose of making these futures trades. In addition, here, as in *Stokes*, the Defendants were dealing with relatively unsophisticated investors without previous experience in commodities trades. Each of the Plaintiffs' declarations filed with this motion reports that he or she had no previous experience in investing in foreign currency futures. In light of these facts, the Court should find the existence of a fiduciary duty owed by Defendants to the Plaintiffs.

The Complaint alleges a number of specific duties that Defendants owed to the Plaintiffs by virtue of their position as a fiduciary, including but not limited to the duty to deal fairly and honestly with Plaintiffs. (Complaint ¶ 184.) The Complaint then alleges that Defendants breached their fiduciary duty to Plaintiffs by, among other things, stealing Plaintiffs' money and failing to act fairly and honestly with Plaintiffs. (*Id.* ¶ 185.) As a result of these breaches, Plaintiffs lost the amount of their investments, and thus suffered damages. (*Id.* ¶ 186.) Because Plaintiffs alleged facts supporting all three elements of a breach of fiduciary claim, Plaintiffs set forth a valid claim for breach of fiduciary duty, and no factual dispute concerning this claim is likely.

### 10.   Plaintiffs Stated a Valid Breach of Oral Contract Claim

The Complaint's tenth claim is breach of oral contract. "A cause of action for damages for breach of contract is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Careau & Co. v. Security Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1388, 272 Cal. Rptr. 387, 395 (1990). The elements are the same regardless of whether the allegedly breach contract is written or oral. *See id.*

In this case, Plaintiffs entered into an oral agreement with the Defendants by which the Defendants agreed to invest their funds for the trading of foreign currency futures. Plaintiffs performed their obligations under the agreement by delivering funds to the Defendants to invest. Defendants, however, breached these agreements by, among other things, stealing the funds instead of investing them, in contravention of Plaintiffs' instructions. As a result of these thefts, Plaintiffs lost the amount of their investments, namely $330,849. (Complaint ¶¶ 188-191.) Because the Complaint alleges these facts, the Complaint states a claim for breach of oral contract and no factual dispute concerning the contract claim is likely.

### 11. Plaintiffs Stated a Valid Negligence Claim

The eleventh claim in the Complaint is negligence. In order to prevail on a negligence claim, plaintiffs must show that a defendant owed the plaintiffs "a legal duty, that it breached the duty, and that the breach was a proximate or legal cause of their injuries." *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 477, 110 Cal. Rptr. 2d 370, 379 (2001). Here, the Complaint alleges that the Defendants owed Plaintiffs a duty of care, as their futures brokers, to take reasonable care in handling their funds to prevent unauthorized use of such funds and to ensure that the funds are directed to futures transactions in accordance with Plaintiffs' instructions. Nonetheless, Defendants breached their duty of care by permitting the misappropriation of Plaintiffs' funds, and failing to carry out Plaintiffs' instructions. As a direct and proximate result of these breaches, Plaintiffs' investment amounts were stolen, thereby resulting in the loss of Plaintiffs' investments in the amount of $330,849. (Complaint ¶¶ 193-196.) Since the Complaint alleges these facts, the Complaint sets forth a valid claim for negligence, and a factual dispute concerning the contract claim is unlikely to arise.

### 12. Plaintiffs Stated a Valid Claim for Unfair Competition

The Plaintiffs' twelfth claim is unfair competition under California Business & Professions Code Section 17200 et seq. (the "Unfair Competition Law"). The Unfair Competition Law prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The Court has the authority to make any order "as may be necessary

to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

Here, the Defendants' conduct described above and in the Complaint is unlawful, unfair, and fraudulent in nature. Defendants lured Plaintiffs into investing in fraudulent foreign currency futures transactions. Accordingly, the Court has the authority to restore to Plaintiffs the money that Defendants acquired by means of their fraudulent conduct. Given the detailed showing of Defendants' fraudulent conduct in the Complaint, Plaintiffs adequately alleged a valid claim for unfair competition under California Business & Professions Code Section 17200 et seq., and a factual dispute concerning this claim is unlikely.

### D.   Plaintiffs Are Seeking a Reasonable Amount of Money

The fourth *Eitel* factor, the sum of money at stake, also weighs in Plaintiffs' favor, because they are seeking a reasonable amount of damages against the people and companies that defrauded them. Plaintiffs' motion seeks only the return of their funds, plus interest on all investment payments from the date of the last payment, as well as a trebling of the compensatory damages pursuant to RICO. Although Plaintiffs do not waive any claims, this motion does not seek the following elements of damages:

- The reasonable rate of return on Plaintiffs' investments that could have been accrued, if the Defendants had invested these funds in real foreign currency futures or in prudent investments.

- Interest that accrued on some of Plaintiffs' investments prior to their final investment check.

- Punitive damages pursuant to Plaintiffs' state law claims.[3]

Given that Plaintiffs are limiting their motion to the most reasonably ascertainable damages and are not seeking more complicated elements of damages that might require the

---

[3] Treble damages under RICO are different from the punitive damages sought in the Complaint under Plaintiffs' state law claims. In this motion, Plaintiffs do seek treble damages under RICO, but not punitive damages pursuant to their state law claims.

assistance of expert testimony, Plaintiffs are limiting their demand to reasonable and certain amounts.

### E.     Defendants' Default is not Due to Excusable Neglect

The sixth *Eitel* factor of the possibility of excusable neglect weighs in Plaintiffs' favor, because Defendants are seeking in every possible way to avoid participation in this suit, knowing that Plaintiffs' suit is exposing their continued fraudulent conduct in forex trading after a consent judgment in a CFTC enforcement action ("CFTC Action") required them to stop.   *See U.S. Commodities Future Trading Commission et al. v. National Investment Consultants, Inc., et al.*, No. 05-CV-02641 JSW (N.D. Cal. Sept. 1, 2006) (consent order).   In *Croswaithe*, the Court found that the defendants in that case were served, but despite service had not become involved in the proceedings in the six months between the date of the last service and the date of the decision.   *See Croswaithe v. Galvin Construction Management*, 2007 U.S. Dist. LEXIS 73757, at * 5, 8-9 (N.D. Cal. Sept. 25, 2007) (date of service was March 6, 2007 and date of decision was September 25, 2007).   Likewise here, all Defendants in this case have been served, but have not appeared in the six months following the dates of service in 2007 and last service date on May 17, 2008.

Moreover, Defendants' conduct since the beginning of the case has evinced an intention to dodge participation in this suit.   This conduct includes the following:

- When Glen Alberigi served Raymond Tse, the principal of all of the corporate Defendants, with the Summons and Complaint at Defendants' last known office address, he handed Mr. Tse the papers, and told Tse that he was being served.   At that point, Mr. Tse refused the papers, and the process server had to stick the papers under his arm.   (Declaration of Personal Service of Glen Alberigi at 1 (Docket No. 6.))

- Plaintiff's counsel believes that Mr. Tse dropped the documents on the floor soon after service, because counsel received the papers with a note saying "We found this on the floor" with a return address of the location of Defendants' offices.

(Declaration of Christopher Cooke Regarding Service on Wei-Man "Raymond" Tse ¶ 3 (Docket No. 7).)  As a result, Plaintiffs' counsel mailed Tse a copy of the Summons and Complaint to make sure that he had actual notice of this suit.  (*Id.*)

• The process server seeking to serve Bill Shu-Wai Ma and the corporations for which he is a principal (Christ Investment Service and CIS Service) attempted many times to deliver documents at his residence, but no one would open the door.  Finally, the process server had to effect service of process by substitute service on a member of his household.  (Declarations re Service of Tyson Adlao (Docket Nos. 27-29.)

• Defendant Theresa Wong has left the country after this suit was filed.  Plaintiffs believe that one motive for leaving is the pendency of this suit.  (Lisa Zhang Decl. ¶¶ 19.)

• Plaintiffs' counsel has sent numerous items of mail enclosing court orders and Plaintiffs' filings to the Defendants' last known business address and to the personal residences of some of the individual Defendants.  These items of mail have been returned to Plaintiffs' counsel with notations indicating that no such addressee is there, even though the Defendants can still be found at the Defendants' office address.  (Lisa Zhang Decl. ¶ 9; Declaration of Christopher C. Cooke Supporting Administrative Motion for Order for Publication of Summons, Granting Leave to Issue Subpoenas, and Granting Extension of Time to Serve Complaint ¶¶ 2-3 (Docket No. 51).)

Given this conduct, it is apparent that Defendants are trying to do everything in their power to avoid this suit.  Therefore, the Defendants' non-participation is intentional, and not the result of excusable neglect.

### F.   The Policy Favoring a Decision on the Merits Should Not Weigh Against a Default Judgment

"Although federal policy favors a decision on the merits, Rule 55(b) allows entry of default judgment in cases where the defendants have refused to participate." *Croswaithe v.*

*Galvin Construction Management*, 2007 U.S. Dist. LEXIS 73757, at * 9 (N.D. Cal. Sept. 25, 2007).  In *Croswaithe*, this Court found a refusal to participate where the defendants were served in March 2007, but had not participated as of September 2007.  Moreover, the principal of the defendant had been involved in a related proceeding, a bankruptcy, while remaining uninvolved in the suit at bar.  Here, as in *Croswaithe*, the Defendants have been effectively served, and the last Defendant was served six months ago.  Nonetheless, the Defendants have not participated in the case.

Moreover, Raymond Tse, the principal of the corporate defendants, along with related Defendants, have been involved in the CFTC Action.  They are aware of the common nucleus of facts and events that led to the CFTC Action and were aware that such facts and events could lead to additional litigation.  Despite defending the CFTC Action, Defendants have not defended themselves in this case.  The conduct described in subsection E also confirms that Defendants are trying to dodge responsibility in this case.  No other conclusion is possible but that Defendants are refusing to participate, and that default judgment is therefore warranted.

## IV.   CONCLUSION

Plaintiffs state strong claims for relief based on the copious evidence of Defendants' fraudulent conduct.  Plaintiffs will be prejudiced if they do not obtain a default judgment since they have no other way of recovering the funds they transferred to Defendants.  Plaintiffs are seeking a reasonable amount of damages by seeking only limited and certain amounts with this motion.  Defendants have refused to participate in this case, and are attempting to avoid legal process.  Given these factors, the Court should enter a default judgment.

Respectfully Submitted,

COOKE, KOBRICK, & WU LLP

Dated:  November 26, 2008

By: _____/s/_____
    STEPHEN S. WU
    Attorneys for Plaintiffs