IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEI-FANG LISA ZHANG, et al., | No. C-07-4946 JSW (EDL) |
| Plaintiffs, | **REPORT AND RECOMMENDATION RE: PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| v. | |
| WEI-MAN RAYMOND TSE, et al., | |
| Defendants. | |

On September 24, 2007, Plaintiffs filed this action against twelve Defendants, alleging twelve claims: violation of the Racketeer Influenced Corrupt Organization ("RICO") Act (18 U.S.C. § 1962(c)), RICO conspiracy (18 U.S.C. § 1962(d)), commodities fraud (7 U.S.C. § 6b(a)), commodities fraud – illegal off-exchange futures contract (7 U.S.C. § 6(a)), commodities fraud – fictitious sales (7 U.S.C. § 6c(a)), commodities fraud – conversion (7 U.S.C. §§ 6(a)(2), 13(a)(1)), fraud, common law conversion, breach of fiduciary duty, breach of oral contract, negligence, and unfair competition (Cal. Bus. & Prof. Code § 17200 et seq.). Two Defendants, Molly Lau and Run Ping Zhou, responded to Plaintiffs' complaint and were subsequently dismissed from this action on September 3, 2008 and September 10, 2008, respectively. See Docket Nos. 90, 93. The remaining Defendants are: Wei-Man Raymond Tse, Theresa Wong, James Yu, Bill Shu Wai Ma, Victor So, Jian Ziao, Christ Investment Service, Inc., CIS Service, Inc., Pacific Best Group Ltd. a.k.a. Pacific Best Company Ltd., and South China Investment Inc. Plaintiffs effected service of process on all remaining Defendants through various means. See Declaration of Stephen Wu ¶¶ 6-9, 12-13, 16-18.

After entry of default on November 7, 2007 and April 11, 2008 against the remaining Defendants, Plaintiffs filed this motion for entry of default judgment on November 26, 2008. On December 1, 2008, Plaintiffs' motion was referred to this Court for a report and recommendation pursuant to Northern District of California Civil Local Rule 72-1. The motion came on for hearing on January 13, 2009. Attorney Stephen Wu appeared for Plaintiffs. Defendants did not file an opposition to Plaintiffs' Motion, and did not appear at the hearing.

**Background**

Plaintiffs are individuals and a small business in the San Francisco Area and in particular are members of the San Francisco Chinese community. See Declaration of Mei-Fang Lisa Zhang ¶ 3. Defendants are individuals and the businesses they operated in San Francisco, which purported to conduct foreign currency futures trading on behalf of clients for investment purposes. See Compl. ¶¶ 25-31; Wu Decl. ¶ 3. Plaintiffs invested large sums of money with Defendants for foreign currency futures trading in response to personal solicitations and advertisements in Chinese language newspapers. See Compl. ¶¶ 75-106; Lisa Zhang Decl. ¶¶ 4-16; Declaration of Carol Jian Deng ¶¶ 3-7; Declaration of Zue-Huan Gao ¶¶ 3-7; Declaration of Jimmy Jen ¶¶ 3-5; Declaration of Hao Liang ¶¶ 3-6; Declaration of Yang-Chun Zhang ¶¶ 3-6.

Defendants' businesses, however, were wholly fraudulent. See Compl. ¶3; Wu Decl. ¶ 4; Lisa Zhang Decl. ¶ 18. Defendants opened an office, used telephone trading lines in Hong Kong, created computerized records, faxed and emailed written reports of accounts to customers, provided receipts for funds received, and in some cases returned modest amounts of investor moneys, all for the purpose of creating the appearance of a legitimate foreign currency futures trading business. See Compl. ¶ 3; Lisa Zhang Decl. ¶ 8. Defendants, however, never actually conducted any foreign currency futures trading, and simply stole the funds that investors transferred to them and took them for their personal use. See Compl. ¶ 3; Lisa Zhang Decl. ¶ 18.

**Discussion**

Federal Rule of Civil Procedure 55(b)(2) authorizes the Court to enter judgment against a defendant against whom a default has been entered, assuming that defendant is not an infant, is not incompetent or in military service. Defendants here are not unrepresented minors, incompetent or in

2

military service. See Lisa Zhang Decl. ¶¶ 10-12.

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977) (citing Pope v. United States, 323 U.S. 1, 12 (1944)). In exercising its discretion to grant default judgment, the court may consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Generally, upon entry of default, the factual allegations of the complaint are taken as true, except for those relating to damages. See Televideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir.1987).

Here, the Eitel factors weigh in favor of default judgment. Most importantly, the substantive claims in the complaint appear to have merit and the complaint is sufficient to state those claims.

Plaintiffs have stated a valid RICO claim:

> RICO renders criminally and civilly liable "any person" who uses or invests income derived "from a pattern of racketeering activity" to acquire an interest in or to operate an enterprise engaged in interstate commerce, § 1962(a); who acquires or maintains an interest in or control of such an enterprise "through a pattern of racketeering activity," § 1962(b); who, being employed by or associated with such an enterprise, conducts or participates in the conduct of its affairs "through a pattern of racketeering activity," § 1962(c); or, finally, who conspires to violate the first three subsections of § 1962, § 1962(d).

H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 232-33 (1989); 18 U.S.C. §§ 1962(c), 1964(c). Here, Plaintiffs allege that Defendants are individuals and corporations, and thus are all "persons" as "individuals" or "entities" capable of holding legal or beneficial title for purposes of RICO. See 18 U.S.C. §§ 1961(3); Compl. ¶ 108. The "enterprise" in this case, called the "Forex Fraud Enterprise," is alleged to consist of the collection of the following individuals and entities: (1) Wei-Man Raymond Tse, (2) Run Ping Zhou (a.k.a. Flora Zhou), (3) Theresa Wong, (4) James Yu, (5) Bill Shu Wai Ma, (6) Molly Lau, (7) Victor So, (8) Jian Xiao, (9) Christ Investment Service Inc., (10) CIS Service, Inc., (11) Pacific Best Group Ltd. (a.k.a. Pacific Best Company Ltd.), (12) South China Investment Inc., (13) National Investment Consultants, Inc., (14) Christ Investment FCM

3

Service, Inc. (a California corporation), (15) CIS International LLC (a Nevada limited liability company), and (16) Christ Investment Service, LLC. Defendant Tse was the mastermind behind this enterprise. See Compl. ¶ 109. The other individuals worked for and managed the affairs of the business entity Defendants. See Compl. ¶ 110. The Forex Fraud Enterprise engaged in interstate commerce by seeking investments in foreign currency futures trading. See Compl. ¶¶ 41-51, 112. Defendants conducted or participated in the conduct of the Forex Fraud Enterprise. See Compl. ¶ 110. The "pattern" of activity consists of numerous predicate acts within recent years. See Compl. ¶¶ 127-128. The "racketeering activity" consists of the predicate acts of wire fraud, bank fraud, and interstate transportation of stolen property. See Compl. ¶¶ 117-126. Defendants' conduct has injured Plaintiffs' property in that they invested money with Defendants, which Defendants stole. See Compl. ¶¶ 75-106.

In addition, Plaintiffs have stated a claim for RICO conspiracy. The RICO conspiracy statute, 18 U.S.C. § 1962(d), provides, "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." In this case, Defendants violated section 1962(d) by conspiring to violate section 1962(c). Plaintiffs allege that Defendants agreed among themselves to steal money from investors such as Plaintiffs, and "to conduct and/or participate in, directly or indirectly, the conduct of the affairs of the Forex Fraud Enterprise . . . through a pattern of racketeering activity." See Compl. ¶¶ 135-140. As described above, Plaintiffs have alleged a pattern of racketeering activity, including wire fraud, bank fraud, and interstate transportation of stolen property.

Plaintiffs have stated a claim for commodities fraud pursuant to the Commodity Exchange Act, which states in relevant part:

> It shall be unlawful--
> (1) for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person; or
> (2) for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or other agreement, contract, or transaction subject to paragraphs (1) and (2) of section 7a(g) of this title, that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market--
> (A) to cheat or defraud or attempt to cheat or defraud the other person;
> (B) willfully to make or cause to be made to the other person any false report or

4

>    statement or willfully to enter or cause to be entered for the other person any false record;
>    (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or, in the case of paragraph (2), with the other person; . . . .

7 U.S.C. § 6b(a). Any person who violates the Commodity Exchange Act ("CEA"), or who willfully "aids, abets, counsels, induces, or procures the commission of a violation of [the CEA] shall be liable for actual damages" resulting from one or more commodities transactions, and caused by such violation to any other person who made such transactions. See 7 U.S.C. § 25(a)(1). Such transactions include those consisting of any contracts of sale of any commodity for future delivery or deposit or payment of money in connection with any order to make such a contract. See 7 U.S.C. § 25(a)(1)(B).

Here, Plaintiffs allege that "Defendants' purported placement of foreign currency futures trades constitutes the making of a contract of sale of a commodity for future delivery made, or to be made, for or on behalf of investors" pursuant to the CEA. See Compl. ¶ 143 ("Such contracts for future delivery are or may be used for delivering a commodity, namely foreign currency, sold in interstate and/or foreign commerce for the fulfillment thereof."). Plaintiffs allege that Defendants made numerous fraudulent misrepresentations, showing that they intended to "cheat or defraud" Plaintiffs in violation of 7 U.S.C. § 6b(a)(2)(A). See Compl. ¶¶ 48, 67, 145. Plaintiffs allege that Defendants sent false statements of alleged foreign currency transactions, alleged profits and losses, and purported account balances in violation of 7 U.S.C. § 6b(a)(2)(B). See Compl. ¶ 146. Plaintiffs also allege that Defendants willfully deceived or attempted to deceive Plaintiffs with regard to the foreign currency futures contracts and the disposition of those contracts in violation of 7 U.S.C. § 6b(a)(2)(C). See Compl. ¶ 147.

Plaintiffs have also stated a claim for illegal off-exchange futures contracts in that the complaint alleges that the commodities transactions were outside of any formal and regulated market in violation of 7 U.S.C. § 6(a), which requires, *inter alia*, that commodities transactions be "conducted on or subject to the rules of a board of trade which has been designated or registered by the Commission as a contract market or derivatives transaction execution facility for such commodity." 7 U.S.C. § 6(a)(1). The complaint alleges that Defendants "engaged in transactions

that were not conducted on or subject to the rules of a board of trade which has been designated or registered . . . as a contract market or derivatives transaction execution facility for such commodity," that Defendants "did not cause Plaintiffs' or any other investors' contracts to be executed or consummated by or through a contract market," and that the contracts "were not evidenced by a record in writing" showing the necessary terms. See Compl. ¶¶ 152-154.

Plaintiffs have sufficiently alleged a claim for fictitious sales commodities fraud. Under 7 U.S.C. § 6c(a), it is unlawful to enter into a futures transaction that is a "fictitious sale." Plaintiffs allege that the foreign currency futures transactions were "wholly fictional," and that "Defendants never engaged in any trading activity with Plaintiffs' funds." Compl. ¶ 162.

Plaintiffs have stated a claim for commodities fraud based on conversion. Under 7 U.S.C. § 13(a)(1), it is unlawful to embezzle, steal or convert money received having a value in excess of $100 from a commodities trading customer. Moreover, under 7 U.S.C. § 6d(a)(2), it is unlawful for a commodities broker to commingle customer funds with its own funds. Plaintiffs allege that: "Defendants accepted Plaintiffs' and other customers' money to guarantee trades, and failed to segregate and safeguard their money. To the contrary, Defendants stole money in excess of $100 that Plaintiffs and other customers deposited with Defendants to guarantee their trades." Compl. ¶ 169.

Plaintiffs have stated a claim for fraud. The essential elements of a fraud claim are: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979, 990 (2004). Here, Defendants made numerous misrepresentations to Plaintiffs. See Compl. ¶¶ 48, 67. Defendants knew that these misrepresentations were false when they made them, and intended to defraud potential investors such as Plaintiffs and induce them to invest in foreign currency futures transactions. See Compl. ¶ 173. Plaintiffs were unaware of the falsity of these claims and, in reliance upon Defendants' misrepresentations, invested money with Defendants. See Compl. ¶ 174. Plaintiffs justifiably relied on Defendants' representations. See Compl. ¶ 174. Defendants stole Plaintiffs' investments, thereby causing damages to Plaintiffs. See Compl. ¶ 176; Lisa Zhang Decl. ¶ 18.

6

Plaintiffs have stated a claim for common law conversion. The essential elements of conversion are: "[1] the plaintiff's ownership or right to possession of the property at the time of the conversion; [2] the defendant's conversion by a wrongful act or disposition of property rights; and [3] damages." AmerUS Life Ins. Co. v. Bank of America, N.A., 143 Cal. App. 4th 631, 642 n.4 (2006). Plaintiffs allege that they owned the money which they invested with Defendants as deposits to begin trading foreign currency futures. See Compl. ¶¶ 179-80. Defendants allegedly "wrongfully disposed of Plaintiffs' property by stealing and misappropriating funds from Plaintiffs' accounts." Compl. ¶ 181. Plaintiffs suffered damages due to Defendants' conduct. See Compl. ¶ 182.

Plaintiffs have stated a claim for breach of fiduciary duty. "The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) a breach of the fiduciary duty; and (3) resulting damage." Pellegrini v. Weiss, 165 Cal. App. 4th 515, 524 (2008). A fiduciary duty has been found to exist where a defendant accumulated funds from a number of unsophisticated investors and invested them in commodities. See Stokes v. Henson, 217 Cal. App. 3d 187 (1990). In Stokes, the defendant presented investment opportunities to unsophisticated investors, some of whom he met through church activities, who had no experience in the investment field and who trusted the defendant's purported financial knowledge. The Stokes court determined that the defendant had a fiduciary relationship with the plaintiffs. Similarly here, Plaintiffs had no experience in the foreign currency futures trading field and therefore relied on Defendants to act as brokers. See Lisa Zhang Decl. ¶ 15; Yang-Chun Zhang Decl. ¶ 5; Liang Decl. ¶ 5; Jen Decl. ¶ 4; Gao Decl. ¶ 6; Deng Decl. ¶ 6. Therefore, Plaintiffs have adequately alleged that Defendants owed them a fiduciary duty. Plaintiffs allege that Defendants owed them a number of duties, including the duty to deal fairly and honestly with Plaintiffs. See Compl. ¶ 184. Plaintiffs allege that Defendants breached those duties by, *inter alia*, fairly to deal fairly and honestly with Plaintiffs by stealing their money. See Compl. ¶ 185. Plaintiffs allege that as a result of those breaches, they suffered monetary damages. See Compl. ¶ 186.

Plaintiffs have stated a claim for breach of an oral contract. "A cause of action for damages for breach of contract is comprised of the following elements: (1) the contract, (2) plaintiff's

7

performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." Careau & Co. v. Security Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1388 (1990). The elements are the same regardless of whether the allegedly breach contract is written or oral. See id. Plaintiffs allege that they orally agreed with Defendants to invest their funds to be used for the purpose of trading foreign currency futures. See Compl. ¶ 188. Plaintiffs delivered the funds to Defendants, thereby performing under the contract. See Compl. ¶ 189. Plaintiffs allege that Defendants breached the contracts by not conducting currency trades and by stealing Plaintiffs' funds, causing Plaintiffs to suffer monetary damages. See Compl. ¶¶ 190-91.

Plaintiffs have stated a claim for negligence. In order to prevail on a negligence claim, a plaintiff must show that a defendant owed that plaintiff "a legal duty, that it breached the duty, and that the breach was a proximate or legal cause of their injuries." Merrill v. Navegar, Inc., 26 Cal. 4th 465, 477 (2001). Here, Plaintiffs allege that Defendants owed them a duty of care, as their futures brokers, "to take reasonable care in the handling of their funds to prevent unauthorized use of such funds," and to ensure that the funds were invested "properly in accordance with Plaintiffs' instructions." Compl. ¶ 193. Defendants allegedly breached their duty of care by permitting the misappropriation of Plaintiffs' funds, and by failing to carry out Plaintiffs' instructions with respect to the currency trades. See Compl. ¶ 194. As a result of these breaches, Plaintiffs' investment amounts were stolen, thereby causing monetary damages to Plaintiffs. See Compl. ¶¶ 195-96.

Finally, Plaintiffs have stated a claim for unfair competition. California's Unfair Competition Law prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The Court has the authority to make any order "as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." Cal. Bus. & Prof. Code § 17203. Here, Plaintiffs allege that the course of Defendants' conduct constituted unlawful, unfair and/or fraudulent business practices. See Compl. ¶ 198.

The majority of the remaining Eitel factors also weigh in favor of granting default judgment. First, if the motion were denied, Plaintiffs would be prejudiced because they would likely be without

a remedy. See Pepsico, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). The record contains evidence that at least some of the defaulting Defendants have been actively avoiding participation in this lawsuit. See Declaration of Personal Service of Glen Alberigi (docket no. 6) (stating that Mr. Tse wouldn't take the papers when Mr. Alberigi served him, so Mr. Alberigi put the papers under Mr. Tse's right arm); Declaration of Christopher Cooke Regarding Service on Wei-Man Raymond Tse (docket no. 7) ¶ 3 (stating that Plaintiffs believe that Mr. Tse dropped the papers on the floor because Plaintiffs' counsel received the papers by mail with an anonymous note stating, "We found this on the floor."); Declaration of Service of Tyson Adlao (docket nos. 27-29) (stating that attempts to personally serve Bill Shu-Wai Ma and the corporations of which he is a principal were unsuccessful because no one would open the door to the residence, so the process server had to effect substitute service on a member of the household); Lisa Zhang Decl. ¶ 19 (stating that Theresa Wong is believed to have left the country to avoid this lawsuit).

      Second, although the sum of money at stake here is large, it is no more than can be reasonably ascertained. Plaintiffs seek return of their funds, plus interest, and treble damages under RICO. See Pls.' Mot. for Default J. at 14. Plaintiffs do not seek speculative damages such as the reasonable rate of return on Plaintiffs' investments that could have accrued, the interest that accrued on some of Plaintiffs' investments prior to their final investment check, and punitive damages under state law. See Pls.' Mot. for Default J. at 14. Third, because Defendants did not file an answer to the complaint, there is little to suggest that there is a possibility of a dispute concerning material facts. Nor is it likely that Defendants' default was due to excusable neglect, given the evidence that at least some Defendants appear to have attempted to avoid service. Although there is a policy favoring decisions on the merits, default is appropriate where the defendants have refused to participate. See Croswaithe v. Galvin Construction Management, 2007 U.S. Dist. LEXIS 73757, *9 (N.D. Cal. Sept. 25, 2007). Moreover, this is not the first case in which similar allegations were made against at least some Defendants in this case. On June 28, 2005, the Commodities Futures Trading Commission and the Commissioner of Corporations for the State of California filed a complaint for permanent injunction and other relief against, *inter alia*, Pacific Best, South China and

9

Mr. Tse alleging violations of the CEA and alleging that the companies dealt in futures when the transactions had not been conducted on, or subject to the rules of, a registered board of trade in violation of CEA and state law. See Compl. ¶ 53; U.S. Commodities Future Trading Commission, et al., v. National Investment Consultants, Inc., et al., No. 05-CV-02641 JSW (N.D. Cal. filed June 28, 2005). That action resolved with a consent order enjoining the defendants, including some of the Defendants in this case, from violating the CEA, regulations promulgated thereunder and state law, and ordering the defendants to pay civil penalties and restitution. See Compl. ¶¶ 56-57. Plaintiffs allege that even after the consent order, Defendants created additional business entities to conduct their fraudulent scheme under new corporate names. See Compl. ¶ 61. Accordingly, the Court recommends that the motion for default judgment be granted.

**Damages**

Plaintiffs have the burden of proving their damages through testimony or written affidavit. To prove Plaintiffs' damages, Plaintiffs submitted the declarations of Stephen Wu, Plaintiffs' counsel, Plaintiff Lisa Zhang, Plaintiff Yang-Chun Zhang, Plaintiff Liang, Plaintiff Jen, Plaintiff Gao and Plaintiff Deng.

Plaintiffs seek $330,849 in compensatory damages, representing the funds each Plaintiff invested with Defendants. See, e.g., Wu Decl. ¶ 20, Table 1. Specifically, Plaintiff Bay Area Affordable Housing LLC seeks return of its investment of $93,500. See Jen Decl. ¶ 5. Plaintiff Deng seeks return of the investment of $21,500. See Deng Decl. ¶ 7. Plaintiff Gao seeks return of the investment of $40,000. See Gao Decl. ¶ 7. Plaintiff Liang seeks return of the investment of $37,159. See Liang Decl. ¶ 6. Plaintiff Lisa Zhang seeks return of her investment of $118,990. See Lisa Zhang Decl. ¶ 16. Plaintiff Yang-Chun Zhang seeks return of her investment of $19,700. See Yang-Chun Zhang Decl. ¶ 6. Plaintiffs request treble damages pursuant to RICO, in the amount of $992,547, which is three times $330,849. See 18 U.S.C. § 1964 ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, . . . ."). Because Plaintiffs have stated a RICO claim, the Court recommends an award of $992,547 in compensatory damages.

**Pre-judgment interest**

Plaintiffs seek prejudgment interest in accordance with the formula in O2 Micro International Ltd. v. Monolithic Power Systems, Inc., 420 F. Supp. 2d 1070, 1077, n. 1 (N.D. Cal. 2006) (calculating prejudgment interest according to the following formula: Interest = Principal*Rate*Time). The applicable rate is 7% as specified by California Constitution, article XV, section 1. See also Children's Hosp. & Med. Ctr. v. Bonta, 97 Cal.App.4th 740, 775 (2002). Plaintiffs calculate interest based on the total investment starting on the date of the last interest payment, thereby not seeking prejudgment interest for the payments made before the date of the last payment mad by each Plaintiff. See Wu Decl. ¶ 23. Plaintiffs seek a total of $40,958.21 in prejudgment interest. See Wu Decl. ¶ 23, Table 2.

**Attorneys' fees**

Attorneys' fees may be awarded under RICO. See 18 U.S.C. § 1964. Plaintiffs seek $39,552.50 in fees incurred in prosecuting this action through default against the defaulting Defendants. See Wu Decl. ¶ 27. The Court understands that Plaintiffs do not seek fees for work in connection with claims against or asserted by dismissed Defendants Molly Lau and Run Ping Zhou. See Wu Decl. ¶ 27. Attorneys Christopher Cooke and Stephen Wu billed 121.7 hours at an hourly rate of $325 each. See Wu Decl. ¶ 27. The Court finds that the hourly rates and number of hours are reasonable.

**Costs**

Plaintiffs seek costs in the amount of $7,875.84 as permitted under RICO. See 18 U.S.C. § 1964. See Wu Decl. ¶ 24. This amount includes the costs of the filing fee, service of process on the defaulting Defendants, postage and delivery of documents to the Court and photocopying charges. See id. Plaintiffs do not seek costs associated with claims involving the dismissed Defendants. The Court finds that the costs are reasonable.

**Conclusion**

The Court recommends granting Plaintiffs' motion for default judgment in the amount of $992,547.00 in damages, $40,958.21 in pre-judgment interest, $39,552.50 in attorneys' fees and $7,875.84 in costs, for a total of $1,080,933.50, in addition to post-judgment interest.

Any party may serve and file specific written objections to this recommendation within ten (10) business days after being served with a copy. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3 . Failure to file objections within the specified time may waive the right to appeal the District Court's order.

Dated: January 13, 2009

*Elizabeth D. Laporte*
ELIZABETH D. LAPORTE
United States Magistrate Judge